## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

VINH T. VAN,                            )
                                        )        FILED: AUGUST 19, 2008
                  **Plaintiff,**        )    **No:** 08CV4718
                                        )        JUDGE MANNING
         vs.                            )        MAGISTRATE JUDGE BROWN
                                        )
**MARY E. PETERS, SECRETARY OF THE**    )        BR
**DEPARTMENT OF TRANSPORTATION,**       )    **JURY DEMAND**
                                        )
                  **Defendant.**        )

### AS AND FOR A FIRST COUNT OF ACTION
### (Title VII-NATIONAL ORIGIN DISCRIMINATION)

#### Nature of the Action

1. VINH T. VAN, ("VAN") brings this action under Title VII of the Civil Rights Act of 1964 and as amended by inter alia, the Civil Rights Act of 1991, 42 U.S.C.A. §§ 2000e et seq., ("ACT"). venue jurisdiction under 28 U.S.C.A. § 1343 (4) and 42 U.S.C.A. § 2000e-5(f), for DEPARTMENT OF TRANSPORTATION ("DOT") having subjected VAN to National Origin discrimination by failure to treat her the same as other non-Vietnamese employees despite VAN's repeated complaints about same.

2. VAN, is an adult Vietnamese working in a racially diverse office..

#### PARTIES

3. VAN is an adult person and a resident of Cook County, State of Illinois.

4. VAN is an employee of FEDERAL AVIATION ADMINISTRATION (FAA), which is a Department of DOT.

5. At all times relevant, DOT has been and is a Federal Agency of the Government and MARY E. PETERS, is the Secretary of Transportation of DOT.

6. DOT is an employer within the meaning of the Civil Rights Act and 42 U.S.C. 2000(e) *et seq*., and has been at all times material to the allegations herein.

## FACTUAL BASIS

7. That VAN was treated differently than non-Asians in the handling of any work of her complaints such as:

> A. In November of 2006, VAN was singled out for a reprimand after Speaking on a cell phone during her break;

> B. In June of 2007, VAN was harassed by her supervisor for speaking in her native tongue to another Vietnamese coworker and then subjected to questions by the same supervisor on what was being stated between them;

> C. In July of 2007, VAN was subjected and "targeted' by her supervisor to find fault in her performance and subjected her to negative performance appraisals. Her supervisor singles her out because of being Vietnamese and and a woman;

> D. VAN is qualified for a promotion to the I-band level, but her supervisor Refuses to promote her and her supervisor implied it was because she did not speak English well.

8. Further, DOT and FAA by its action or inactions of its agents based upon VAN's complaints in the work place, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of VAN's employment and VAN's performance in her job, based upon her National Origin. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by <u>inter</u> <u>alia</u> the Civil Rights Act of 1991.

9. DOT's and FAA's violation of the Civil Rights Act of 1964 has proximately caused VAN to suffer damages.

10. The FAA's violation of VAN rights was willful.

11. By reason of the National Origin discrimination of FAA, VAN has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

12. Plaintiff filed a discrimination charge against Defendant with the Equal Employment Opportunity Commission Office of Federal Operations (EEO). That charge was timely filed under the internal policy and procedures of DOT and after filing went through various stages of litigation.

13. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Title VII-RACE DISCRIMINATION)

### Nature of the Action

14. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by inter alia, the Civil Rights Act of 1991, for the Defendant, DOT and FAA having subjected Plaintiff, VAN to racial discrimination by failure to treat her same as other non-Asian employees despite VAN'S repeated complaints about same.

15. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as more fully set forth herein.

16. Defendant by its action or in actions of its agents treated VAN differently than non-Asians in the handling of her work environment complaints such as:

  A. In November of 2006, VAN was singled out for a reprimand after Speaking on a cell phone during her break;

  B. In June of 2007, VAN was harassed by her supervisor for speaking in her native tongue to another Vietnamese coworker and then subjected to

3

questions by the same supervisor on what was being stated between them;

    C. In July of 2007, VAN was subjected and "targeted' by her supervisor
to find fault in her performance and subjected her to negative performance
appraisals. Her supervisor singles her out because of being Vietnamese and
and a woman;

    D. VAN is qualified for a promotion to the I-band level, but her supervisor
Refuses to promote her and her supervisor implied it was because she
did not speak English well.

Management failed to take any corrective action for VAN because she is Hispanic.

All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et

seq; as amended by inter alia the Civil Rights Act of 1991.

17. By reason of the racial discrimination of DOT, VAN has suffered a loss of

earnings and benefits, in addition to suffering great pain, humiliation and mental anguish,

all to her damage.

18. Further, said action on the part of the Defendant was done with malice and

reckless disregard for Plaintiffs' protected rights.

19. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this

action (see Exhibit "A"), and Plaintiff timely filed this action.


## AS AND FOR A THIRD CAUSE OF ACTION
### (Title VII- SEX DISCRIMINATION)

### Nature of the Action

20. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by

inter alia, the Civil Rights Act of 1991, for the Defendant, DOT and FAA having

subjected Plaintiff, VAN to sex discrimination by failure to treat her same as other male

employees despite VAN'S repeated complaints about same.

21. Plaintiff repeats and realleges each and every allegation set forth above with the

4

same force and effect as more fully set forth herein.

## FACTUAL BASIS

22.    That VAN was treated differently than males in the handling of any work

environment complaints such as:

> A. In November of 2006, VAN was singled out for a reprimand after
> Speaking on a cell phone during her break;

> B. In June of 2007, VAN was harassed by her supervisor for speaking in her
> native tongue to another Vietnamese coworker and then subjected to
> questions by the same supervisor on what was being stated between them;

> C. In July of 2007, VAN was subjected and "targeted' by her supervisor
> to find fault in her performance and subjected her to negative performance
> appraisals. Her supervisor singles her out because of being Vietnamese and
> and a woman;

> D. VAN is qualified for a promotion to the I-band level, but her supervisor
> Refuses to promote her and her supervisor implied it was because she
> did not speak English well.

Management failed to take any corrective action for VAN because she is a female.

23. Further, DOT and FAA by its action or inactions of its agents based upon VAN's

complaints in the work place, caused and created a hostile work environment which

unreasonably interfered with the terms and conditions of VAN's employment and VAN's

performance in her job all because of her sex. All in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil

Rights Act of 1991.

24.   DOT's and FAA's violation of the Civil Rights Act of 1964 has proximately caused

VAN to suffer damages.

25.  The FAA's violation of VAN rights was willful.

26. By reason of the sex discrimination of FAA, VAN has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

27. Plaintiff filed a discrimination charge against Defendant with the Equal Employment Opportunity Commission Office of Federal Operations (EEO). That charge was timely filed under the internal policy and procedures of DOT and after filing went through various stages of litigation.

28. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

2. For injunctive relief, including but not limited to relief required to make Plaintiff whole so there are no future retaliations or blocked opportunities and for any losses caused by the violations of Defendant;

3. For compensatory damages of $300,000.00 for each count set forth above;

4. For costs of suit, including reasonable attorney's fees and expert fees, pursuant to 42 U.S.C.A § 12117(a), which incorporates the remedies set forth in Title VII of the Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000e-5(k); and

5. For such other and further relief as the court deems proper.

VINH T. VAN

BY:/S/ **Michael T. Smith**
Michael T. SMITH
Trial Attorney

Michael T. Smith
6180407IL
440 W. Irving Park Road
Roselle, IL 60172
(847) 895-0626

**U.S. Department of
Transportation**

1200 New Jersey Ave., S.E.
Washington, D.C.  20590

Office of the Secretary
of Transportation

May 22, 2008

## FEDERAL EXPRESS #7910 7213 3979

RE:    DOT Complaint No. 2007-21475-FAA-04

Ms. Vinh T. Van
1295 Tunbridge Trail
Algonquin, IL  60102

Dear Ms. Van:

This transmits the U.S. Department of Transportation's final agency decision in the subject complaint alleging discrimination filed against the Federal Aviation Administration.  A finding of no discrimination is made.  If you are dissatisfied with this decision, you have the following appeal rights:

--    Within 30 calendar days of your receipt of this final decision, you may appeal this decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036.  (EEOC Form 573, Notice of Appeal/Petition, is enclosed for this purpose.)

--    Within 90 calendar days of your receipt of this final decision or after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC, you may file a civil action in an appropriate U.S. District Court.  The Court, at your request, may appoint and authorize legal counsel in circumstances that it deems just without the payment of fees, costs or security.  The granting or denial of the request is within the sole discretion of the Court.

You must name the person who is the official agency head and his or her official title as the defendant in your appeal.  In your case, you must name the following official as the defendant:

The Honorable Mary E. Peters
Secretary of Transportation
1200 New Jersey Avenue S.E.
Washington, D.C. 20590

*EXHIBIT "A"*

Failure to provide the name or official title of the agency head may result in dismissal of your case.  Please be advised that at the time you file an appeal or civil action, you must furnish a copy of the documents to the following officials:

> Associate Director, Compliance Operations Division (S-34)
> Departmental Office of Civil Rights
> U.S. Department of Transportation
> 1200 New Jersey Ave., S.E., W78-221
> Washington, D.C.  20590
>
> Office of the Chief Counsel (AGC-30)
> Federal Aviation Administration
> U.S. Department of Transportation
> 800 Independence Ave., S.W.
> Washington, DC  20591

Sincerely,

Yvette R. Workman, Esq.
Associate Director
Complaints Adjudication and
   Program Evaluation Division
Departmental Office of Civil Rights

Enclosures

cc:   ACR-1

      AGC-30

## FINAL AGENCY DECISION
## COMPLAINT NO. DOT 2007-21475-FAA-04

This is the final Departmental decision in the discrimination complaint filed by Ms. Vinh T. Van [hereinafter *the Complainant*] against the Federal Aviation Administration (FAA), Department of Transportation (DOT) [hereinafter *the Agency*].

## I.    CLAIM

Whether the Complainant was subjected to a hostile work environment by her supervisor because of her race (Asian), national origin (Vietnamese) and sex (female).  Some examples of this hostile work environment include, but are not limited to the following incidents:

   A.    In November 2006, her supervisor counseled her for speaking in the hallway on her cell phone during her break;

   B.    On June 12, 2007, she was questioned by her supervisor for speaking Vietnamese over the telephone; on another occasion, her supervisor interrupted and terminated her conversation with a coworker with whom she was speaking Vietnamese;

   C.    Her mid-appraisal progress review, dated July 13, 2007, contained many negative commentaries, including concerns about her job knowledge, problem analysis, judgment and decision making, planning and organization skills, writing ability, interpersonal skills, overdue assignments, and her delayed submission of PACE vouchers;[1]

   D.    Her supervisor has not promoted her to the I-Band level.

## II.    PROCEDURAL BACKGROUND

| | |
|---|---|
| Alleged Discriminatory Actions Occurred: | November 2006 and continuing |
| Initial Counseling Contact Occurred: | July 2, 2007 |
| Notice of Right to File Received: | July 28, 2007 |
| Formal Complaint Filed: | August 10, 2007 |
| Complaint Accepted: | September 5, 2007 |
| Investigation Conducted: | August 10, 2007 - February 8, 2008 |

---

[1] In a supplemental affidavit, Complainant claimed management's actions as set forth in Incident "C," were taken in reprisal for filing the present complaint.  (ROI, Ex. F1b).

Subject: Van FAD, 2007-21475-FAA-04                                    2

Report of Investigation Issued (ROI)[2]        February 15, 2008
Complainant's Request for EEOC Hearing:        February 27, 2008
EEOC's Order of Dismissal:[3]                  April 16, 2008

This decision is being issued pursuant to Title 29, <u>Code of Federal Regulations (C.F.R.)</u>, §
1614.110(b).

## III.    FACTUAL BACKGROUND

    A.    <u>General</u>

The Complainant has been employed with the FAA since June 1985. At the time
relevant to this complaint, she held the position of Electronic Engineer, FV-855-H,
Technical Operations, Operations Support Center-Chicago, Great Lakes Regional
Office, FAA, Des Plaines, Illinois. Her first level supervisor is John Welzenbach
(Caucasian, U.S. Citizen, male), Manager, Operations Engineering Support Center.
Her second level supervisor is Tom Smith (race, national origin, sex unknown),
Manager, Operations Support Engineering Group. (ROI, Exs. F1a, F3a).

    B.    <u>Incident a: In November 2006, Complainant's supervisor counseled
        her for speaking in the hallway on her cell phone during work</u>

        *1.    Complainant's Testimony*

Complainant states, on November 26, 2006, she came to Mr. Welzenbach's office to
report on her work assignments. After she finished her report, Mr. Welzenbach
mentioned that another manager had informed him that she was in the stairwell
speaking on her cell phone. Complainant contends Mr. Welzenbach singled her out
because she was speaking her native language. (ROI, Ex. F1b).

        *2.    Management's Testimony*

John Welzenbach, Manager, testifies the incident for which Complainant was
counseled occurred in May 2006. The counseling was based on a complaint he had
received from Angel Cuadrado, a fellow manager. Mr. Cuadrado had reported that
Complainant was engaged in extended conversations within the stairwell adjacent
to his desk. Mr. Cuadrado told Mr. Welzenbach Complainant often engages in cell
phone conversations that extend well beyond her 15-minute break and he is
routinely bothered by these conversations. Mr. Welzenbach orally counseled

---

    [2] ROI = Report of Investigation, Ex(s). = Exhibit(s), p(p). = page(s).

    [3] The EEOC Administrative Judge's April 16, 2008, Order of Dismissal refers to
Complainant's "voluntary" withdrawal [from the hearing]; however, the file does not
include documentation of a written withdrawal.

Subject: Van FAD, 2007-21475-FAA-04                                                    3

Complainant and reminded Complainant that her breaks were limited to 15
minutes. He also made Complainant aware that her conversations within the
stairwell were bothersome to other employees. Mr. Welzenbach states he asked
Complainant to go to a designated break area, such as the cafeteria. He told her
personal phone calls from her desk were permitted; however, she should keep them
to a minimum so as not to interfere with her official duties. (ROI, Ex. F3a).

On October 31, 2006, Mr. Cuadrado informed Mr. Welzenbach of another incident in
which Complainant was having personal phone conversations. Accordingly, during
Complainant's performance review on November 8, 2007, he reiterated his earlier
conversation concerning adherence to break time and recommended she minimize
her personal calls. Mr. Welzenbach states he noted many projects and assignments
were either late or incomplete. He states he saw a nexus between the phone calls
and her poor performance. (ROI, Ex. F3).

### 3.    Other Testimony

Angel Cuadrado (Hispanic, Puerto Rico, male), Supervisory General Engineer,
testifies he observed Complainant on various occasions in the stairwell near his
desk using a cell phone. He estimated Complainant's calls to be 20 to 30 minutes in
length. Mr. Cuadrado states he was concerned about Complainant being away from
her work area and he believed 20 to 30 minutes was excessive. Accordingly, he
reported to Mr. Welzenbach that the Complainant was away from her work area
and taking excessive time for phone calls. (ROI, Ex. F5).

Mr. Cuadrado states he did not keep a record of dates or times he observed
Complainant talking on her cell phone. However, he saw her on a number of
occasions. He states in the last two or three months, he has not observed
Complainant making excessive cell phone calls. (ROI, Ex. F5).

Mr. Cuardrado states he has not observed other employees using the phone, taking
excessive time for personal calls. He further stated he does not believe
Mr. Welzenbach exhibited a hostile work environment toward Complainant or
discriminated against her because of her race, national origin or sex. (ROI, Ex. F5).

### 4.    Complainant's Rebuttal Testimony

Complainant essentially reiterated testimony provided in her affidavit. She states
she sometimes takes emergency phone calls from her family regarding her mother's
illness. She takes these calls away from hr desk because Mr. Welzenbach has
shown no tolerance when she speaks Vietnamese at her desk. She contends no one
else has been reprimanded for speaking about personal matters, and she believes
she is being targeted because she is Vietnamese. Complainant denies that
Mr. Welzenbach counseled her about speaking on her cell phone or about the 15-

minute break allowance. She states, in fact, employees in her work area do not have scheduled breaks. Complainant denied that her personal phone calls affected her work performance. (ROI, Ex. F1b).

C.    Incident b:  On June 12, 2007, Complainant was questioned by her supervisor for speaking Vietnamese over the telephone; on another occasion, her supervisor interrupted and terminated her conversation with a coworker with whom she was speaking Vietnamese.

1.    *Complainant's Testimony*

Complainant testifies, on June 12, 2007, she was talking on the telephone when Mr. Welzenbach came to her desk. She hung up the telephone because Mr. Welzenbach was waiting for her. Mr. Welzenbach questioned Complainant about who she was speaking to and where the person worked. Complainant states she became upset because Mr. Welzenbach was asking her embarrassing questions; however, she answered them professionally. Complainant contended Mr. Welzenbach seemed annoyed by Complainant's answers. She states Mr. Welzenbach continued to ask her questions about what she was working on, and treated her as if she were a child. She states his attitude was "demanding, scaring and intimidating." (ROI, Ex. F1a).

Complainant states Mr. Welzenbach has harassed her for speaking in her native language to Phil Chung. When Mr. Welzenbach overheard Complainant and Mr. Chung speaking in Vietnamese, he interrupted them and terminated their conversation. Mr. Welzenbach told Complainant, if she and Mr. Chung were not working on the same project, Mr. Chung was not allowed to come to her desk and interrupt her work. Complainant contends other employees under Mr. Welzenbach's supervision have visitors and he does not treat them in the same manner in which he treats Complainant. Complainant contends Mr. Welzenbach's actions constitute a hostile work environment and disparate treatment. (ROI, Ex. F1a).

She identified Ed Johnson, Al Sampra, Werner Buch and Keith Lewandowski as Caucasian males who are treated more favorably in that they gather in the office to talk non-business matters, laughing loudly for prolonged periods of time. (ROI, Ex. F1a).

2.    *Management's Testimony*

John Welzenbach, Manager, testifies, on June 12, 2007, he stopped by Complainant's desk for a discussion on an overdue work assignment. Seeing that

Subject: Van FAD, 2007-21475-FAA-04                                                    5

she was on the telephone, he left and intended to stop by after her phone conversation. Complainant's conversation continued for a very lengthy period, more than 30 minutes. Mr. Welzenbach states he revisited Complainant's desk and she immediately hung up the phone. He reminded her to keep her personal phone conversations to a minimum. In the short time Mr. Welzenbach was at Complainant's desk he recognized she was speaking her language, probably Vietnamese. (ROI, Ex. F3a).

Mr. Welzenbach states he is not aware of instances in which he has interrupted and terminated a conversation between Complainant and a coworker who were speaking Vietnamese, other than the June 12, 2007 conversation. Mr. Welzenbach states he has not questioned employees about speaking in foreign languages at work. He further states the FAA does not have a policy regarding use of a foreign language. (ROI, Ex. F3a).

### 4.    Other Testimony

Philip Chung (Asian, Vietnamese, male), Electronic Engineer, testified he speaks to Complainant in English and Vietnamese. He stated no one ever told him not to speak in Vietnamese. (ROI, Ex. F6).

Thomas A. Stanonis (White, U.S. male), Electronic Engineer, testified, on June 12, 2007, he personally witnessed Complainant on the telephone speaking in her native language. He states Mr. Welzenbach approached her and interrogated her regarding who she was speaking to. Complainant gave Mr. Welzenbach the person's name and he then asked Complainant where the person worked, and why she was speaking to the person. Mr. Stanonis contended Complainant was visibly upset, trembling and stuttering. (ROI, Ex. F7a).

Mr. Stanonis contends other employees in the office speak their native languages. To his knowledge, Mr. Welzenbach has never told them not to do so. (ROI, Ex. F7a).

Alexander Sampra (Caucasian, Greek, male), Electronic Engineer, testifies other employees in the office speak their native languages. (ROI, Ex. F8).

### 4.    Complainant's Rebuttal Testimony

Complainant states she works with many Vietnamese employees at the FAA., including Don Bui and Tuyen Kien. When she speaks to these employees about FAA projects, they speak Vietnamese and English. She further states she had spoken to Dao Pham concerning a project in Minnesota about two times. (ROI, Ex. F1b).

Subject: Van FAD, 2007-21475-FAA-04                                              6

Complainant states Mr. Welzenbach confronted her at her desk as soon as she finished a phone conversation and demanded that she tell him who she was talking to and about what project. Complainant states Mr. Welzenbach's actions shows he is intolerant of Vietnamese women. (ROI, Ex. F1b).

> D. <u>Incident c: Complainant's mid-appraisal progress review, dated July 13, 2007, contained many negative commentaries, including concerns about her job knowledge, problem analysis, judgment and decision making, planning and organization skills, writing ability, interpersonal skills, overdue assignments, and her delayed submission of PACE vouchers.</u>

### 1. *Complainant's Testimony*

Complainant testifies all of her prior performance reviews have been good. However, her most recent mid-appraisal review dated July 13, 2007, contained many negative comments. She contends this negative review is directly due to the fact that she filed the present complaint. (ROI, Ex. F1a).

Complainant contends Mr. Welzenbach looks for, focuses, and emphasizes the little things that he can write negatively on her performance appraisal. She states he does not approve of her speaking in Vietnamese at work. Complainant states Mr. Welzenbach singles her out because she is Vietnamese and a woman. (ROI, Ex. F1a).

### 2. *Management's Testimony*

John Welzenbach, Manager, testifies employees are rated in three categories, with three expectations for each category, for a total of nine expectations. He states Complainant met seven of the nine expectations. As is customary, Complainant was provided feedback on all nine expectations, with additional information for improving the two expectations that were not met. Mr. Welzenbach states he provided mid-term feedback to all employees during his tenure as supervisor and manager, with the intention of improving their performance. (ROI, Ex. F3a).

Mr. Welzenbach states he wrote Complainant's mid-term performance feedback in May 2007. He further states he finished every employee's feedback in April and May of 2007. After the incident on June 12, 2007, he went to her performance file and noticed that the mid-term performance feedback was incomplete. He then amended the mid-term feedback to include the June 12 personal phone call issue and attempted to schedule the discussion on June 28. He was able to reschedule on July 11, 2007. Mr. Welzenbach denied that his comments on Complainant's mid-term review were made because she filed an EEO complaint. Rather the feedback

Subject: Van FAD, 2007-21475-FAA-04                                    7

was based on documented information concerning her performance and conduct. (ROI, Ex. F3g).

### 3.    Other Evidence

On July 11, 2007, Mr. Welzenbach provided a Mid-Period Progress Review to the Complainant. He noted the following comments:

> Your planning, organizing and prioritization does not meet my expectation. I have 6 emails for which you were copied concerning weather products. I have not received my status from you on resolution of these.

> I often notice that you are on either your desk phone or cell phone. A fellow manager reported to me that you were in a stairwell and then in conference room on your cell phone. I discussed this with you on November 21, 2006 and counseled you on minimizing these calls. On June 12, I again discussed personal calls versus business calls, and advised that you work on minimizing distractions. Please consider the time on the phone during duty hours for personal issues should be kept to a minimum.

> In June, you submitted all PACE Vanpool vouchers since last October. Please review the information on pages 14 through 17 of this document. Timely submission of vouchers is a requirement.

> To improve this Expectation, please provide actions and conclusions to the 6 items referenced within the emails. Minimize distractions such as personal calls, visits that don't involve work related issues and timely submission of vouchers.

(ROI, Ex. F1c)

### 4.    Complainant's Rebuttal Testimony

Complainant reiterated her prior testimony, claiming she had not received any negative feedback from customers regarding errors in her work. Complainant contended Mr. Welzenbach's comments were made in retaliation for her having filed the present complaint. However, she did not provide any evidence to support her contention. (ROI, Ex. F1b).

E.    Incident d:  Complainant's supervisor has not promoted her to
the I-Band level.

    *1.    Complainant's Testimony*

Complainant testifies Mr. Welzenbach has failed to promote her to the I-Band level,
even though she has done her work as required, and her phone or work habits have
never changed.  Recently, Mr. Welzenbach has taken more aggressive steps in
trying to hold her back from a promotion.  She states she is the only engineer in the
I-Band level, and she is the only female engineer.  (ROI, Ex. F1a).

Complainant states she has been working on an Employment Development Plan
(EDP) since 2005.  She has completed all the required tasks and submitted them to
Mr. Welzenbach.  Therefore, she expected to be promoted.  When Complainant
asked Mr. Welzenbach why she had not been promoted, he told her, "It was a
miscommunication."  Mr. Welzenbach implied that she did not understand English.
On Complainant's performance appraisal, Mr. Welzenbach indicated that she
needed to improve her interpersonal and communication skills.  (ROI, Ex. F1a).

    *2.    Management's Testimony*

John Welzenbach, Manager, testified Complainant inquired about a promotion after
her initial performance appraisal review for FY 2004, around October or November
2003.  He then reviewed the FAA/NATCA Collective Bargaining Agreement and
contacted Valerie Granahan, a specialist in the Resource Management Branch for
support.  Based on his discussion with Ms. Granahan, he discussed and initiated an
Engineering Development Plan with Complainant, starting in January 2004.
Complainant has not completed this plan.  (ROI, Ex. F3a).

Mr. Welzenbach denies that Complainant was subjected to a hostile work
environment or discriminated against because of her race, national origin, or sex.
(ROI, Ex. F3a).

    *3.    Other Evidence*

Complainant's Engineering Development Plan, effective January 5, 2004, is
included in the investigative file as Exhibit F3c.

    *4.    Complainant's Rebuttal Testimony*

Complainant refutes Mr. Welenbach's statement that he developed an Engineering
Developmental Plan with her in January 2004.  She states, on February 10, 2005,
Mr. Welzenbach sent her an e-mail regarding her Engineering Developmental Plan.
Complainant states she completed the Engineering Developmental Plan, yet she

Subject:  Van FAD, 2007-21475-FAA-04                                    9

was not promoted.  Instead of promoting Complainant, Mr. Welzenbach continued to add challenges to the list and he still has not promoted her.  Complainant contends Mr. Welzenbach's refusal to promote her is because of her race and sex.  She states she is doing equivalent work to her I-Band coworkers.  (ROI, Ex. F1b).

## IV.    APPLICABLE LAW

### Hostile Work Environment

Harassment of an employee that would not occur except for the employee's race, color, sex, national origin, age, disability or religion is unlawful, if it is sufficiently patterned or pervasive.  McKinley v. Dole, 765 F.2d 1129, 1138-1139 (D.C. Cir. 1985).  In assessing whether the Complainant has set forth an actionable claim of harassment, the conduct at issue must be viewed in the context of the totality of the circumstances, considering the nature and frequency of offensive encounters and the span of time over which the encounters occurred.  Such conduct must be both objectively and subjectively offensive, such that a reasonable person would find the work environment to be hostile or abusive.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998; Burlington Industries v. Ellerth, 524 U.S. 742, 752 (1988).

To establish a *prima facie* case of such harassment, the Complainant must show that:  (1) she belongs to a statutorily protected class;[4] (2) she was subjected to unwelcome conduct; (3) the conduct complained of was based on her protected status; (4) the conduct had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer, i.e., the employer knew or had reason to know of the harassment and failed to take prompt remedial action.  See Adams v. U.S. Postal Service, EEOC No. 01976860 (September 15, 2000) (*citing* Henson v. City of Dundee, 682 F.2d (11th Cir. 1987)).  The harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances.  EEOC Enforcement Guidance on Harris v. Forklift Systems, Inc., EEOC Notice No. 915.002 (March 8, 1994).

---

[4] In order to establish a *prima facie* case of discrimination on the basis of reprisal, the Complainant must show that: (1) she engaged in a statutorily protected activity, *i.e.*, opposed unlawful discriminatory employment practices or participated in the EEO process; (2) her employer was aware of his previous protected activity; (3) subsequently, her employer took an adverse employment action against her; and (4) the adverse employment action followed the protected activity in such a time and manner as to raise an inference of retaliation.  Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987); Downing v. U.S. Postal Service, EEOC Decision No. 01822326 (1983); Cohen v. Fred Meyers, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

Subject: Van FAD, 2007-21475-FAA-04                                              10

If the Complainant satisfies the five (*prima facie*) elements, then the agency is subject to vicarious liability insofar as the harassment would have been "created by a supervisor with immediate authority over the Complainant." Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, EEOC Notice No. 915.002 (June 18, 1999), at 4 (citing, <u>Burlington Industries, Inc., v. Ellerth</u>, 524 U.S. 741, 118 S. Ct. 2257, 2270 (1998) and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct. 2275, 2292-93. (1998).

When the harassment does not result in a tangible employment action, the agency can raise an affirmative defense to liability which it can meet by demonstrating: (1) that it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the agency or to avoid harm otherwise. Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, at 12. This defense is not available when the harassment results in a tangible employment action (e.g., a discharge, demotion, or reassignment) being taken against the employee. <u>Id.</u> at 7.

## V.    **ANALYSIS**

Complainant satisfied the first and second elements of her *prima facie* case in that she is Asian, Vietnamese, and female, and she claimed management's conduct was unwelcome. She has not satisfied the first element with respect to her claim of reprisal.[5] She also has failed to satisfy the remaining elements of her *prima facie* case. Evidence compiled in the investigation of this complaint fails to produce anything that would suggest management's actions were taken because of Complainant's race, national origin, or sex. It is clear that management's actions were taken in an effort to correct Complainant's performance. Specifically:

> Regarding Incident "a," Mr. Welzenbach noted that Complainant had engaged in extended personal telephone conversations and he was reasonably concerned that her absence from her work assignment was having an adverse affect on her work performance.

---

[5] Complainant engaged in statutorily protected activity when she initiated EEO contact on July 2, 2007 regarding the present complaint. However, she has provided no evidence nor does the record suggest that Mr. Welzenbach was aware of Complainant's EEO contact when he wrote the comments on Complainant's mid-year performance evaluation form. In fact, Mr. Welzenbach stated he prepared the comments in April or May 2007, and attempted to schedule a meeting regarding Complainant's mid-year performance evaluation on June 28, 2007,which was well before Complainant contacted the EEO office on July 2, 2007. Therefore, she has failed to satisfy the second element.

Regarding Incident "b," Mr. Welzenbach again noted that Complainant was engaging in extended telephone conversations. He denied that her interrupted a conversation between Complainant and a coworker because they were speaking in their native language.

Regarding Incident "c," Mr. Welzenbach denied that he rated Complainant as not meeting expectations in two categories. The comments he provided were made to provide feedback to enable Complainant to improve her performance and conduct. Mr. Welzenbach testified he wrote feedback for Complainant, as well as for all other employees in his work unit, in April and May of 2007. After the June 12, 20007 incident, he went to her performance file and noticed that the mid-term performance feedback was incomplete. He then amended the mid-term feedback to include the June 12, 2007 incident and attempted to meet with Complainant on June 28, 2007. He was subsequently able to reschedule a meeting with the Complainant for July 11, 2007. As Mr. Welzenbach completed Complainant's Mid-Progress Progress Review prior to June 28, 2007, when he first scheduled a meeting with Complainant, his comments could not have been made in retaliation for her contact with the EEO Counselor on July 2, 2007.

Regarding Incident "d," Mr. Welzenbach testified, when Complainant inquired about a promotion, he developed an Engineering Development Plan to enable Complainant to gain the experience necessary to warrant a promotion. Complainant has not completed the plan. Therefore, she has not been promoted to the I-Band.

Complainant also failed to show that management's conduct had the purpose or effect of unreasonably interfering with her work performance, or that it created an intimidating, hostile, or offensive work environment. Even if the incidents occurred as the Complainant cited them, we do not find that the incidents cited would be characterized by a reasonable person as severe or pervasive, and thus, did not have the purpose or effect of unreasonably interfering with his work performance. Murray v. Department of Agriculture, EEOC No. 01986319 (May 22, 2000); Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982).[6]

---

[6] The Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 755, 788 (1998) noted that isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. The Court noted that such conduct "must be both objectively and subjectively offensive, such that a reasonable person would find [the work environment to be] hostile or abusive, and . . . the victim in fact did perceive to be so." Id. at 2283. In determining whether harassment is sufficiently severe or pervasive, the objectionable conduct should be evaluated from the objective standpoint of a "reasonable person." Title VII does not serve "as a vehicle for vindicating the petty slights suffered by the hypersensitive." Zabowicz v. West Bend Co., 589 F. Supp. 780, 784 (E.D. Wis. 1984). See also Ross v. Comsat, 34 FEP Cases 270, (D. Md. 1984, rev'd on other grounds, 759 F.2d 355 (4th

Subject:  Van FAD, 2007-21475-FAA-04                                                12

Having failed to satisfy all of the elements of her *prima facie* case, the Complainant cannot prevail in her claim of hostile work environment harassment

## VI.  <u>CONCLUSION</u>

Therefore, it is the decision of the final decision of the U.S. Department of Transportation that a finding of no discrimination is made in this matter.

---

Cir. 1985).  Therefore, if the challenged conduct would not substantially affect the work environment of a reasonable person, no violation should be found.  <u>Moylan v. Maries County</u>, 792 F.2d 746, 749 (8th Cir. 1986) (single incident or isolated incidents of harassment will not be sufficient to establish a violation; the harassment must be sustained and nontrivial).