IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIHN T. VAN,<br>  Plaintiff,<br><br>   v.<br><br>MARY E. PETERS, Secretary of the<br>Department of Transportation,<br>  Defendant. | )<br>)<br>)<br>)  No. 08 C 4718<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

Vihn Van has been employed by the United States Department of Transportation ("DOT") as an electrical engineer since 1985. She began her career at the DOT as a Grade 7 engineer and, after more than 20 years with the DOT, was promoted to a Grade 12 engineer.[1] Dissatisfied with her failure to obtain a promotion to Grade 13 and upset by interactions with her supervisor, Ms. Van filed a three-count complaint under Title VII alleging discrimination based on her race (Asian), sex (female), and national origin (Vietnamese) arising from her employment at the DOT. The DOT's motion for summary judgment is before the court. For the following reasons, the motion is granted.

**I.  Background**

  **A.  Local Rule 56.1**

Under Local Rule 56.1, a party seeking summary judgment must submit a statement of material facts, consisting of short numbered paragraphs accompanied by citations to admissible

---

[1] Ms. Van appears to be complaining about her failure to attain the Grade 13 level. However, she intermittently states she is currently a Grade-11 attempting to obtain a promotion to Grade 12. *See, e.g.*, Plaintiff's Response to the DOT's Motion for Summary Judgment at 12 ("Further, Van has been working in a classification above her Grade 11 while other employees doing similar work are paid for Grade Level 12 (PSAF 12)"). The cited portion of Ms. Van's statement of additional facts states "Joe A. Natanishi (Japanese) (male) was never questioned on who he was talking on the phone with" and hence does not shed light on the precise grades at issue. Despite the inconsistent references to grades, the court will assume for the purpose of resolving the DOT's motion that Ms. Van's promotion from Grade 12 to Grade 13 is at issue.

evidence. Loc. R. 56.1(a). The opposing party must submit a concise response to the movant's statement, admitting or denying each paragraph in the movant's statement and citing to supporting evidence. Loc. R. 56.1(b)(3). Failure to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in support of a denial may cause the movant's facts to be deemed admitted to the extent that they are supported by the record. *See id.*; *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994). Failure to comply with the local rules governing the form of summary judgment motions is not a "harmless technicality." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994).

In this case, Ms. Van frequently responds to the DOT's facts by contending they are misleading, irrelevant, or argumentative or adds additional facts. For example, paragraph 20 of the DOT's facts provides, "[i]n June 2007, Van was speaking in her native Vietnamese language while on a company phone. Ex.1, pg.25, ln. 19-24." In response, Ms. Van states:

> Response: Objection as misleading, Van was talking on the phone with a coworker in Washington.
>
> Q. I thought it was June 2007. I thought you told [sic] It was June 2007?
>
> A. The incident when I filed a complaint on June 2007. I filed a complaint because the incident happened on June 2007, and when I was talking on the phone with the worker in Washington, yeah…
>
> (Van Deposition page 23, Lines 18-24)

This fails to respond to a simple declarative statement by DOT: was Ms. Van speaking Vietnamese on a company phone in June of 2007? To the extent that Ms. Van fails to admit or deny the DOT's facts by providing non-responsive responses, the DOT's facts are deemed admitted. *See* Loc. R. 56.1(b)(3)(C). Similarly, to the extent that Ms. Van contends that the DOT's facts are misleading, irrelevant, or argumentative, but does not provide specific citations

to the record that support her position, the DOT's facts are deemed admitted. *Id.*; *see also Keefe v. Mega Enterprises, Inc.*, No. 02 CV 5156, 2005 WL 693795, at *1 (N.D. Ill Mar. 23, 2005) (objecting to statements of facts on relevance grounds is inappropriate). Finally, for both sides, where objections are mere semantic quibbling and the fact asserted is supported by the record, the fact is deemed admitted. With this understanding, the following facts are derived from the parties' Local Rule 56.1 statements and are undisputed unless otherwise noted.

B. Facts

1. The Parties

Plaintiff Vihn Van immigrated from Vietnam to the United States in 1979 at the age of 21. After she graduated from the Illinois Institute of Technology in Chicago in 1985, the DOT hired Ms. Van as an entry-level electrical engineer with the Federal Aviation Administration ("FAA"). Ms. Van began her career at the DOT as a Grade 7 engineer, and through promotions over the years reached the Grade 12 level.

John Welzenbach is Ms. Van's immediate supervisor at the DOT. Angel Cuadrado is another supervisor at the DOT. Al Sampra and Tom Stanonis are DOT engineers who work at the Grade 13 level. Phil Chung is Vietnamese and one of Ms. Van's co-workers at the DOT. Joe Nakanishi is another co-worker at the DOT and is also Ms. Van's union representative.

2. Events Leading up to Van's EEOC Charge

In her complaint, Ms. Van points to four alleged instances of race, sex and national origin discrimination.

a. Cell Phone in the Stairwell

The first allegedly discriminatory action occurred in November of 2006, when Angel Cuadrado, another DOT supervisor, complained to Mr. Welzenbach that Ms. Van was talking on

her cell phone in the stairwell for 20-30 minutes. Mr. Cuadrado believed that Ms. Van was making personal calls on company time because she was speaking Vietnamese.

Ms. Van does not dispute that she made personal calls in the stairwell on her cell phone. The FAA does not have a policy regarding use of an employee's personal cell phone while on the job. With regard to FAA phone lines, employees may make local personal phone calls during breaks. Ms. Van contends that Mr. Cuadrado, her Spanish supervisor, reported her in an effort to restrict her from speaking in Vietnamese. Mr. Welzenbach orally counseled Ms. Van about her personal cell phone use, but did not write her up or restrict her from making further personal calls.

### b. Call to Vietnamese Co-Worker

The next allegedly discriminatory incident occurred eight months later, in June of 2007. On this occasion, Mr. Welzenbach observed Ms. Van speaking in Vietnamese while using a company phone. After Ms. Van finished her call, Mr. Welzenbach asked to whom she was speaking. Although Mr. Welzenbach assumed that Ms. Van had made a personal call, Ms. Van explained that she was speaking to a Vietnamese co-worker in Washington. Mr. Welzenbach thought Ms. Van's project with that co-worker was over, but accepted her representation and did not pursue the matter further.

Ms. Van, however, asserts that Mr. Welzenbach told her not to speak with the Vietnamese co-worker during the workday unless they had a project together. Ms. Van has submitted a declaration asserting that Mr. Welzenbach was "unprofessional, threatening, and degrading" in connection with the call to the Vietnamese co-worker. The DOT, on the other hand, disagrees as to Mr. Welzenbach's demeanor and notes that Ms. Van did not make this claim when she was deposed.

Ms. Van also points to declarations from four other DOT employees who contend they were not questioned about as to whom they were speaking on the telephone or counseled for making personal calls. Mr. Welzenbach supervises three of these employees. *See* Nakanishi Decl. pg 2 (different); Stanonis Decl. pg 2; (same); Lakhani Decl. pg 1-3 (same); Ochoa Decl. pg 2 (same). Ms. Van contends that Mr. Welzenbach discriminated against her by counseling her about personal phone calls and not counseling male employees or employees with different national origins.

### c. Performance Appraisal

The third allegedly discriminatory incident is Ms. Van's mid-term performance appraisal in 2007. In this performance appraisal, Van received a "fully successful" performance rating, but Mr. Welzenbach noted certain areas in which Ms. Van could improve. Specifically, he pointed to Ms. Van's personal phone usage, as well as an instance in which Ms. Van filed a late van pool voucher and instances in which Ms. Van submitted late assignments.

Ms. Van does not dispute that she filed a late van pool voucher and submitted late assignments. She contends that her tardiness was due to her mother's death and receipt of late data from the field. The parties dispute the legitimacy of these reasons.

With regard to Ms. Van's work performance, Mr. Welzenbach also asked Ms. Van to work as part of a team with co-workers, raise her voice at meetings, and speak to her co-workers to share her job knowledge with others. Ms. Van was not receptive to these suggestions, asserting that she is shy, does not like to raise her voice or "tell others who to do their job," and works better on her own.

### d. Failure to Promote

Finally, Ms. Van asserts that Mr. Welzenbach did not promote her to the Grade 13 level because she is female. She has been working on an Engineering Development Plan since 2005

to help her reach the Grade 13 level and believes her performance is at the Grade 13 level and that the failure to promote her is discriminatory.

In support of her contention that she is performing at the Grade 13 level, Ms. Van points to the testimony of two Grade 13 level engineers, Al Sampra and Tom Stanonis, who believe that she can work at Grade 13 level. The parties dispute the extent to which these other employees work on projects similar to Ms. Van's and whether they are familiar with her work assignments. More generally, the parties dispute whether Ms. Van is qualified to work at the Grade 13 level, has successfully completed the Engineering Development Plan, and whether the amount of work requested of Ms. Van was the same that was requested of others who were promoted to Grade 13.

### 3. Ms. Van's Complaint

Ms. Van's complaint contains three counts: national origin discrimination (Count I), race discrimination (Count II), and sex discrimination (Count III).

## II. Discussion

### A. Standard for a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To withstand a motion for summary judgment, the nonmoving party must show that a dispute about a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

B.   Ms. Van's Discrimination Claims

Title VII forbids an employer covered under the Civil Rights Act "to discharge any individual . . . because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff seeking relief under Title VII can prove discrimination using the "direct" method or the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-1061 (7th Cir. 2003).

Ms. Van contends that she has established that she is entitled to a trial using the indirect method of proof. To establish a prima facie case of discrimination using the indirect method, she must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the class were treated more favorably. *See, e.g., Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643 (7th Cir. 2006).[2]

---

[2]   In the interests of completeness, the court notes that even if Ms. Van was proceeding using the direct method by attempting to establish the existence of a mosaic of circumstantial evidence that could allow a jury to infer that the DOT discriminated against her, she would still need to point to an adverse action. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010) (to survive summary judgment under the direct method, the plaintiff must demonstrate "triable issues as to whether discrimination motivated the adverse employment

If Ms. Van establishes a prima facie case of discrimination, the DOT must then produce evidence of a legitimate, non-discriminatory reason for taking the adverse employment actions at issue. *See id.* If it proffers such a reason, the burden then shifts back to Ms. Van, who must demonstrate that the DOT's proffered reason is pretextual. *See id*. Here, the court's consideration of the DOT's motion for summary judgment begins and ends with the adverse employment action prong.

The DOT contends that Ms. Van's discrimination claims fail because, among other things, she did not suffer an adverse employment action and thus cannot state a prima facie case of discrimination. An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 644 (7th Cir. 2000); *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993) (an adverse employment action is one that materially affects the terms and conditions of employment). However, not every unwelcome employment action qualifies as an adverse action as negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1988) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *see also Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d at 136 (a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

---

action") (internal citations omitted).

significantly diminished material responsibilities, or other indices that might be unique to a particular situation).

The Seventh Circuit has recognized three categories of materially adverse employment actions: those affecting "(1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to 'humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in [her] work place environment.'" *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007), *citing Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir. 2002). Ms. Van's claims fall into the second and third categories, as she asserts the DOT's failure to promote her was discriminatory and that her workplace conditions humiliated and upset her.

### 1. Failure to Promote

Failure to promote is a "significant change in employment status" that rises to the level of an adverse employment action. *Burlington Indus. v. Ellerth*, 524 U.S. at 761. To state a prima facie case of discrimination based on failure to promote, Ms. Van must show: (1) she belongs to a protected group; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employee who was promoted was not a member of the protected class and was not better qualified. *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007).

Ms. Van first generally asserts that she should have been promoted, but does not point to a specific job opening or present evidence about employees who were promoted to Grade-13. Because she has not established that an employee outside the protected class who was not better

qualified was promoted instead of her, she cannot state a prima facie case. *See Dandy v. UPS, Inc.*, 388 F.3d 263, 273 (7th Cir. 2004).

Second, the record does not show that there is a triable issue of fact as to whether Ms. Van was qualified to receive a promotion to the Grade-13 level. To support her argument that she should have been promoted, Ms. Van relies on her own belief that she is already working at a Grade-13 level. This is insufficient. *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996) (an employee's own opinions about her work performance or qualifications do not give rise to a material factual dispute); *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d at 784 ("plaintiffs must offer more than mere self-serving appraisals").

Third, Ms. Van has not created a triable issue of fact as to whether the DOT treated similarly situated male or non-Vietnamese employees better, as she does not point to evidence about the background and qualifications of employees who were promoted. *See Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 300-01 (7th Cir. 2004).

Fourth, the statements of two coworkers who stated they believe Ms. Van can perform at the Grade 13 level is not enough to support her failure to promote claim as "isolated comments by co-workers regarding a plaintiff's abilities" are not relevant to the issue of an employer's knowledge or reasoning in making promotion decisions. *See Rabinovitz v. Pena*, 89 F.3d at 487 (rejecting co-worker affidavits because they did not "allege specific facts to support the necessary inference that [the person receiving a promotion] was so much less qualified than [the plaintiff] that only discrimination could have prevented [the plaintiff] from receiving the promotion" or demonstrate what the decision-maker knew "regarding the events alleged in the affidavits that formed the basis of the perceived differences between [the employees]"); *see also Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995) (assessments of performance made by co-workers generally are not enough to withstand summary judgment);

-10-

*Miller v. CCC Information Systems, Inc.*, No. 95 C 6612, 1996 WL 480370, at *7 (N.D. Ill. Aug. 22, 1996) (in constructive discharge case, co-workers' belief that the plaintiff was qualified for a promotion "have no connection with race and fail to demonstrate the type of severe aggravating circumstances that would compel a reasonable person to resign").

Fifth, while Ms. Van's performance rating of "fully successful" indicates her adequate performance at the Grade 12 level, she has presented no evidence regarding her qualifications from which a trier of fact could conclude that she is qualified for a higher grade level. On the contrary, Ms. Van has admitted that she has disagreed and not complied with recommendations by her supervisor, including requests to work on teams and be more verbal.

Sixth, Ms. Van's assertion that her Engineering Development Plan was prolonged is based on her own perception. She did not present evidence about the length of time in which an Engineering Development Plan is generally completed, the length of time in which other employees' Engineering Development Plans were completed, the length of time in which her Engineering Development Plan was expected to be completed, the types of assignments generally included in an Engineering Development Plan, or the manner in which an Engineering Development Plan progresses. She also did not show that she successfully completed the assignments in her Engineering Development Plan. For all of these reasons, Ms. Van cannot withstand summary judgment based on the failure to promote.

### 2. Workplace Conditions

The court next considers Ms. Van's contention that her workplace conditions are so oppressive that they constitute an adverse employment action. A negative alteration in the workplace environment violates Title VII if "the *conditions* in which [the employee] works are changed in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment – an alteration that

can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet." *Herrnreiter v. Chicago Housing Authority*, 315 F.3d at 744 (emphasis in original). Constructive discharge (i.e., where the employer makes the job "unbearable" for the employee) and cases of "harassment – mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially [her] conditions of employment as they would be perceived by a reasonable person in the position of the employee" also rise to the level of an adverse employment action. *Id.* at 744-45.

The court will focus on the events which Ms. Van highlights in her opposition to the DOT's motion for summary judgment since the burden falls on Ms. Van to point to facts showing a genuine issue of material fact. According to Ms. Van, the conditions in the workplace were "demeaning, humiliating, and scary" and thus caused her to suffer an adverse employment action. Plaintiff's Response to the DOT's Motion for Summary Judgment at 11. Specifically, Ms. Van points to: (1) Mr. Welzenbach's interactions with her after he observed her "speaking in her foreign tongue" on the phone, which caused her to be "visibly upset and trembling"; (2) her belief that she has been "working in a classification above her Grade 11 [sic, presumably Grade-12]"; and (3) her belief that Mr. Welzenbach stretched her Engineering Development Plan to over four years "to test the patience of [Ms. Van] in her pursuit of a higher classification." *Id*. at 11-12.

> She also states:
>
> Last, the mid-year performance review which was, even on its face, did undermine Van's adequate performance through the years. Welzenbach stating that Van's performance was lacking on overdue assignment was inconsiderate and adverse based on her clear statements that she was in the field and information was given to her late. Welzenbach stating that Van's pay vouchers were late was inconsiderate and adverse based on her clear statements that it had to do with her mother's death. Welzenbach stating that Van's he had concern over Van's use of her foreign tongue when there is no policy against that, was as adverse and calculated to embarrass Van.

*Id*. at 12.

These allegations are insufficient to show "adverse action" as a matter of law because they fail to demonstrate that Ms. Van suffered a material change in her employment, as Ms. Van continued to have the same responsibilities, maintained the same grade level and pay, remained at the same desk, and did not change supervisors. It is true that Ms. Van is dissatisfied with the DOT. Nevertheless, an action that merely "displeases the employee" is not actionable. *Herrnreiter v. Chicago Housing Authority*, 315 F.3d at 744.

Turning to Ms. Van's specific complaints, Mr. Welzenbach counseled Ms. Van twice about speaking in Vietnamese on her telephone during work hours. One instance was prompted by another supervisor's concern over Ms. Van's personal calls during the work day, based on a call Ms. Van made in the stairwell. While Mr. Welzenbach orally counseled Ms. Van about her personal cell phone use, he neither wrote her up nor restricted her from making further personal calls during the day. The second instance occurred after Mr. Welzenbach observed Ms. Van speaking in Vietnamese while using a company phone. Mr. Welzenbach assumed that Ms. Van was making a personal call, but accepted Ms. Van's explanation that she was speaking to a Vietnamese co-worker in Washington and did not take further action.

Even if the factfinder accepted that Ms. Van was upset after being asked about the first phone call and that she felt her supervisor was "threatening" and "degrading" when he interacted with her about the call to the Vietnamese co-worker, Ms. Van still cannot establish an adverse employment action based on two incidents that upset her and occurred eight months apart. *See Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002) (although supervisor's inspection of the plaintiff's uniform made her feel embarrassed and humiliated, the plaintiff did not suffer an adverse action because it was not severe enough to state a claim for sexual harassment and she did not point to a reduction in pay, a diminution in job responsibilities, or

another indicia of an adverse employment action); *see also Palmer v. Principi*, No. 02 C 5208, 2004 WL 842518, at *3 (N.D. Ill. Apr. 19, 2004) (hostility in the workplace or "feelings of isolation, ostracism, and humiliation [do] not necessarily evidence adverse employment actions" as "[n]ot everything that makes an employee unhappy is an actionable adverse action"), *citing Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir. 2000).

Likewise, Ms. Van's performance review is not actionable as "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). In this case, although Mr. Welzenbach noted that Ms. Van submitted late assignments and late pay vouchers, he nonetheless concluded that her performance was "fully successful" at the Grade 12 level. Further, although Ms. Van felt that her late assignments were not her fault, she does not dispute she submitted late assignments. Viewed objectively, while Ms. Van may believe that her supervisor should have overlooked her late assignments, she did not suffer a tangible job consequence as a result of her review. Finally, for the reasons discussed above in connection with Ms. Van's failure to promote claim, her complaints about the length of her Engineering Development Plan are not enough to survive summary judgment.

Accordingly, while Ms. Van may be unhappy with various aspects of her job, she has failed to establish that she suffered adverse employment action. She thus cannot state a prima facie case for race, sex, and national origin discrimination under the indirect method or prevail under the direct method. The DOT is, therefore, entitled to summary judgment on each of Ms. Van's discrimination claims.

## III. Conclusion

For the reasons stated above, the DOT's motion for summary judgment [#30] is granted.

The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.


DATE:   June 24, 2010

_Blanche M. Manning_
Blanche M. Manning
United States District Judge